## HAMBLIN vs. HAMBLIN.*

*Ninth District Court for Yreka Co., Nov. T.,* 1857.

### DIVORCE—ALIMONY.

It is extreme cruel treatment to accuse a wife of prostitution or to question her chastity. Unless there is proof of the marriage before the court, a decree for alimony cannot be made.

The facts are set out in the opinion.

*Rosborough & Berry, E. H. Stone*, and *I. D. Cosby*, for plaintiff.

*G. W. S. Cummings, W. D. Fair* and *I. D. Turner*, for defendant.

DAINGERFIELD, J.—In this case I confess that I have very great difficulty in arriving at the facts from the evidence, as the testimony upon the only two points relied on is very conflicting. There is evidence on the one side, that the defendant was, up to the time of bringing this action, habitually intemperate ; whilst, on the other, persons of equal respectability and credit, testify that he was not addicted to excessive drinking. And were this suit to be determined on that ground alone, I should certainly find a verdict for the defendant, for I

---

*See Pursely *vs.* Pursely, vol. 1 : 52 ; Gaskins *vs.* Gaskins, ib. : 381.

do not think that the evidence in support of the defendant's intemperance, or of his habitual intemperance, preponderates; and I think that public policy is against the granting of divorces, unless in cases fully made out.

Then, is there any other ground which the statute recognizes, upon which the complainant can rely? The statute of California, on the subject of divorces, recognizes many causes, among which is that of " extreme cruelty," and it is upon that last ground that the plaintiff must recover judgment, if at all, that being the only other cause assigned in this complaint, why a divorce should be granted. Upon this latter ground, however, at " first blush," the evidence would seem to be equally conflicting. But is it 'so? It is true that about an equal number of witnesses testify to the kindness of the defendant to the plaintiff, (and probably more,) than testify to his unkindness; but one witness, and he introduced by the defendant himself, testifies that the defendant did charge the plaintiff with an act, which, in the absence of proof of her guilt, is, in the eye of the law, the grossest act of cruelty which can be perpetrated against an innocent female. It is in proof by one witness (*Mr. Frink*,) that the defendant charged the plaintiff, in effect, if not in the very words themselves, with the crime of adultry; and the letters of defendant to the plaintiff plainly refer to the same charge.

It is true that even such an act as making a charge of this kind may be condoned, but until it is retracted it remains the grossest act of extreme cruelty which it was within the power of the defendant to inflict.

There is no evidence that it ever was retracted, or that the parties ever lived together afterwards, and assumed towards each other the relations of man and wife. The confessions and acknowledgments of the plaintiff of the kindness of her husband, were all anterior to these dates, so that the plea of condonation cannot be supported. Whilst I do not believe that the policy of the law is to grant divorces for slight cause, I do believe that it is a duty which courts and juries owe to society to see that woman is respected, and that all good citizens should aid in her elevation, and that every legal means should be brought to the advancement of that object. Even if one were so base as to be willing to live with a woman whom he had disgraced by calling her a

whore, and should seek to apply the sacred name of wife to her, courts of conscience should not enforce the gratification of such a desire, especially where she protests against assuming such a relation. Nor would a court be justifiable to subject her to the treatment, the reviling and contumely which one of right might inflict upon a woman whom he had thus degraded. Then as a matter of fact from the evidence, I find that the charge of "extreme cruelty" from the defendant towards the plaintiff has been fully made out, and as a matter of law therefrom, that the plaintiff is entitled to her divorce.

With regard to the further prayer of the complaint, to wit: that she be allowed alimony, and a division of the common property, I hold that there is nothing before me upon which to base a decree. There is no averment that there is joint property acquired since coverture, or that he (the defendant) has any property at all. Nor is there any proof of a marriage between the parties. It is true that the evidence shows a *prima facie* case of marriage. The fact that they lived together and maintained towards each other the relation of husband and wife is shown, and this showing for the purpose of giving a right to *sue* is sufficient; but where the right to property is claimed, a *clear legal right* must be shown, which can only be done by proving a legal marriage. It is true, that for certain purposes, as a matter of public policy, courts have ruled that the fact that a man holds out to the world a woman as his wife, shall raise such a presumption of marriage that courts will hold him responsible for her debts; but this is *inter alios*, on the principle that the law will not permit third persons to be imposed upon by the acts of the man holding himself out as a husband, for he has it in his power to let the facts be known; but between the parties themselves no such policy is involved, and the proof is within the reach or under the control of the party desiring it. So that in cases where a woman seeks to recover property which she would only be entitled to by reason of the fact that she was a wife, she must not only allege the fact, but prove it; and the same rule will apply to her which applies to real actions and to "all actions," that she must recover on the strength of her own right. But were we in doubt as to this matter, the amendment to the law of divorce, passed in 1857, I think settles this question. There was no *proof of marriage*, and the only evidence before the court was of the acts of the parties, which would only raise a legal

presumption, such as I have before referred to. The amended statute is imperative on this subject, and requires *proof* of every fact; and the party defendant could not, even by confessing the truth of the bill, relieve the plaintiff of the *onus probandi.*

For these reasons, which I have very hurriedly stated, I shall grant a decree of divorce from the bonds of matrimony, but shall deny all other relief prayed for in the plaintiff's bill. Let each party pay his or her own costs.

Let a decree be so entered.